# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JELANI T. COOPER,** | : | Civil No. 1:19-CV-2230 |
| **Plaintiff,** | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **PENNSYLVANIA HUMAN RELATIONS COMMISSION** | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION AND ORDER

### I.     Factual Background

This workplace discrimination case has been lodged against the Pennsylvania Human Relations Commission (PHRC) by an attorney formerly employed by that agency. In his complaint, the plaintiff, Jelani Cooper, claims that his former employer engaged in a campaign of race-based discrimination that led to a hostile work environment throughout his tenure with the organization. According to Cooper, the hostile work environment based on race discrimination started in 2016 and continued through the administrations of two executive directors, culminating in his allegedly retaliatory firing in 2019 by the current PHRC executive director, Chad Dion Lassiter. Cooper's race discrimination claims were previously raised

1

with the EEOC and settled pursuant to an agreement that PHRC create a diversity committee. Cooper alleges he was terminated in retaliation for complaining about the alleged failure of PHRC to comply with the terms of this settlement agreement and for filing a new EEOC complaint against the defendants. Cooper's hostile work environment and state whistleblower claims were dismissed on summary judgment, with only a Title VII retaliation claim moving forward to trial.

The PHRC has now filed a motion *in limine* seeking to exclude any evidence of the prior settlement agreement between Cooper and the PHRC. (Doc. 85). According to the PHRC, introduction of this evidence is improper because it is not relevant to the sole remaining retaliation claim and, even if it is relevant, it should be excluded under Rule 403 as unduly prejudicial and confusing and misleading to the jury. The PHRC also argues that, since the EEOC has sole discretion to enforce the terms of its settlement agreements, the plaintiff cannot testify as to whether the defendant breached the agreement. Thus, even though one clear aspect of the plaintiff's allegedly protected conduct was protesting what he perceived to be a failure to comply with this agreement, the defense would seek to completely prevent Cooper from alluding to this fact at trial.

This motion is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, the plaintiff's motion *in limine* is denied to the extent that it

seeks to totally preclude any reference to the fact of a prior settlement agreement. We will, however, upon request, tailor appropriate cautionary instructions regarding the limited scope of the jury's consideration of this evidence in order to mitigate any prejudice to the defense.

**II.    Discussion**

In considering the admissibility of evidence regarding the previous settlement agreement, we note that the Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial.  See Luce v. United States, 469 U.S. 38, 41 n.4 (1984); In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases").   Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. United States v. Romano, 849 F.2d 812, 815 (3d Cir. 1988).   Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions."  Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). However, courts should be careful before doing so.

In considering motions *in limine*, which call upon the Court to engage in

3

preliminary evidentiary rulings, we begin by recognizing that these "evidentiary rulings [on motions *in limine*] are subject to the trial judge's discretion and are therefore reviewed only for abuse of discretion . . . Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.'" Abrams v. Lightolier Inc. 50 F.3d 1204, 1213 (3d Cir. 1995) (citations omitted); see Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994) (reviewing *in limine* rulings for abuse of discretion). Yet, while these decisions regarding the exclusion of evidence rest in the sound discretion of the district court, and will not be disturbed absent an abuse of that discretion, the exercise of that discretion is guided by certain basic principles.

One of the key guiding principles is reflected in the philosophy which shapes the rules of evidence. The Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth. The inclusionary quality of the rules is embodied in three cardinal concepts. The first of these concepts is Rule 401's definition of relevant evidence. Rule 401 defines what is relevant in an expansive fashion, stating, "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R.

Evid. 401. Adopting this view of relevance, it has been held that:

> Under [Rule] 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." [Therefore] "[i]t follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant."

Frank v. County of Hudson, 924 F.Supp. 620, 626 (D.N.J. 1996) (citing Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir.1994)) (quotations omitted).

This quality of inclusion embraced by the Federal Rules of Evidence is further buttressed by Rule 402, which generally defines the admissibility of relevant evidence in sweeping terms, providing that, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Thus, Rule 402 expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." United States v. Sriyuth, 98 F.3d 739, 745 (3d Cir.1996) (citations omitted).

Beyond these threshold considerations of relevance and admissibility, Rule 403 of the Federal Rules of Evidence also provides for the exclusion of some potentially relevant but highly prejudicial evidence, stating that, "[a]lthough

5

relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. By permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should consistently be exercised in a fashion which favors the admission of relevant proof unless the relevance of that proof is substantially outweighed by some other factors which caution against admission.

Judged against these principles, we find that evidence of the existence of a settlement agreement is relevant to the plaintiff's retaliation claim. To make out a *prima facie* case of retaliation under Title VII, a plaintiff must show (1) that he engaged in protected activity; (2) that he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 257 (3d Cir. 2017). Cooper argues that he engaged in a protected activity when he complained that the PHRC was not adhering to the terms of the EEOC settlement agreement by putting in place a functioning diversity committee. Therefore, his *prima facie* case

6

rests upon the assertion that he entered into a settlement agreement with the PHRC which required the formation of a diversity committee, he believed the PHRC was not holding up their end of the bargain, he complained about what he perceived as the PHRC's failure to adhere to the terms of the agreement and was subsequently terminated.

We note that, at the summary judgment stage of this litigation, the PHRC did not appear to contest that Cooper's complaints regarding non-compliance with the settlement agreement were protected activities under Title VII. (Doc. 61, at 31) ("The defendant concedes that the plaintiff has met the first two prongs–the plaintiff engaged in a protected activity and suffered an adverse employment action.") Moreover, consistent with the remedial goals of the law, protected activities are defined broadly under Title VII. Thus:

> Protected activity extends beyond formal complaints filed with the EEOC or the PHRC, and can include "informal protests of discriminatory employment practices, [such as] making complaints to management, writing critical letters to customers, [and] protesting against discrimination by industry or society in general." Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir.2006) (citation and internal quotation marks omitted). However, the Third Circuit has also held that "[a] general complaint of unfair treatment is insufficient to establish protected activity under Title VII" and that "opposition to an illegal employment practice must identify the employer and the practice—if not specifically, at least by context." Id.; see also Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir.1995) (affirming district

> court's grant of summary judgment on retaliation claim because plaintiff's letter to her employer's human resources department was not protected activity, as it did not "explicitly or implicitly" complain about age discrimination).

Eldridge v. Municipality of Norristown, 828 F. Supp. 2d 746, 762 (E.D. Pa. 2011), aff'd, 514 F. App'x 187 (3d Cir. 2013). Given this broad definition of protected activities, it seems that complaints about non-compliance with a prior EEOC settlement agreement would constitute a protected activity under the statute. See generally Tripp v. Cnty. of Gates, No. 2:16-CV-00023-FL, 2017 WL 3528653, at *6 (E.D.N.C. Aug. 16, 2017), appeal dismissed and remanded, 732 F. App'x 234 (4th Cir. 2018); Sutton v. Vilsack, No. 2:12-CV-01386-DCN, 2014 WL 4199163, at *4 (D.S.C. Aug. 20, 2014). Given that the act of protesting non-compliance with an EEOC settlement agreement constitutes a protected activity under the statute, it follows that the existence of a settlement agreement is a directly relevant fact in this case. Indeed, it is a fact which would be essential to this aspect of Cooper's retaliation claim.

We are, however, sensitive to the potential for prejudice which may arise if Cooper deemed our limited finding of relevance as an invitation to engage in wholesale litigation of the merits of this prior, settled matter. We remind Cooper that we have previously dismissed those claims in light of the settlement agreement. We

8

advise Cooper that this ruling does not permit litigation of the merits of the prior, settled complaints.[1] Instead, in our view the only matter that is relevant is the fact of the agreement, and not the underlying merits of any prior EEOC complaints. Therefore, we would anticipate that proof relating to this agreement would be strictly limited to establishing the fact of a prior settlement agreement, which included the creation of a diversity committee, and Cooper's protests that the committee had not been implemented, protests that took place near the dates of his discipline and termination.

Moreover, as to any prejudice to the defendants resulting from a jury learning of a previous settlement agreement, we caution that, while the existence of the settlement agreement, and Cooper's complaints that the PHRC was not adhering to its terms, are relevant to his retaliation claim, the jury need not come to a conclusion, and the parties need not opine, as to whether the agreement was, in fact, breached by the defendants. As the defendants point out, the EEOC has sole discretion to make determinations concerning the breach of the agreement. Further, we are sensitive to

---

[1] We caution Cooper regarding the very narrow relevance of this evidence because his response to this motion *in limine* suggests that he intends to try to present evidence relating to hearsay declarations from 2015 regarding race and gender bias at the PHRC as well as hostile workplace complaints from 2016, as part of his 2019 retaliation claim. (Doc. 103). In accordance with our prior rulings, these matters are no longer part of this lawsuit, and they may not be referred to at trial.

9

the defendant's argument that permitting the jury to hear that the parties settled the plaintiff's previous complaint presents a risk of misleading them to believe that the plaintiff was discriminated against in the instant case. Nonetheless, given that the existence of the settlement agreement is not only relevant, but essential, to the plaintiff's retaliation claim, these concerns are best addressed with a carefully tailored limiting instruction directing the jury that: (1) evidence of the agreement be used only to show the basis of Cooper's complaints for which he alleges he was retaliated; (2) the fact that Cooper complained of the PHRC's failure to adhere to the terms of the agreement does not mean it, in fact, breached the agreement; and (3) the settlement agreement is not evidence of discrimination on the part of the defendants.

    An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JELANI T. COOPER,** | : | Civil No. 1:19-CV-2230 |
| **Plaintiff,** | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **PENNSYLVANIA HUMAN RELATIONS COMMISSION** | : | |
| **Defendant.** | : | |

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, with respect to the Plaintiff's Motion *In Limine* which seeks the exclusion of evidence regarding the prior settlement agreement between the plaintiff and the defendant, (Doc. 85), IT IS ORDERED that the motion is DENIED. Evidence of the existence of the prior settlement agreement between the parties may be admitted by the plaintiff, subject to a limiting instruction as outlined in the accompanying memorandum. IT IS FURTHER ORDERED that the plaintiff's pleading, styled as a Motion in Opposition to this motion *in limine* (Doc. 103), is GRANTED, in part, as outlined in the memorandum.

                */s/ Martin C. Carlson*
                Martin C. Carlson
                United States Magistrate Judge

Dated:   August 16, 2022.